UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUCYNA M., | ) |
| Plaintiff, | ) |
| | ) Case No. 23-cv-15358 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| FRANK BISIGNANO, Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lucyna W.,[1] who likes to go by Lucy, R. at 38, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits. Lucy has filed a motion seeking reversal of the decision by Administrative Law Judge ("ALJ") Lovert Bassett that she is not disabled within the meaning of the Social Security Act. The Commissioner responded with a motion for summary judgment affirming the ALJ's decision. For the reasons that follow, the Court grants the Commissioner's motion [14].

**BACKGROUND AND LEGAL STANDARD**

**Procedural History**

On November 30, 2021, Lucy filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning December 1, 2015. Her claim was denied both initially and on reconsideration, after which Lucy requested a hearing before an ALJ. On March 27, 2023, ALJ Bassett held a hearing at which both Lucy and a vocational expert testified. On April 12, 2023, the

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an opinion. Therefore, the Court will refer to Plaintiff by her first name and the first initial of her last name, or only by her first name.

ALJ issued an opinion in which he found that Lucy was not disabled within the meaning of the Social Security Act, although she did have moderate limitations. The Appeals Council then declined review, leaving the ALJ's determination as the Commissioner's final decision reviewable by this Court under 42 U.S.C. § 405(g).

**Legal Standard**

Judicial review of an ALJ's decision is limited to determining whether the decision is supported by substantial evidence and whether the ALJ applied the correct legal standards in reaching her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Surprise v. Saul*, 968 F.3d 658, 661–62 (7th Cir. 2020) (citation omitted). An ALJ need not discuss every piece of evidence but must "build a logical bridge from evidence to conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citation omitted). "Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge." *Sheila W. v. Saul*, 395 F. Supp. 3d 974, 978 (N.D. Ill. 2019) (Cole, J.) (citation omitted). Though a federal court's review of an ALJ's decision is deferential, and courts do not reweigh the evidence or substitute their judgment for that of the ALJ, the ALJ's decision will be remanded if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Villano*, 556 F.3d at 562.

A person is disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has set forth a five-step sequential evaluation for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a); 416.920(a). This evaluation considers whether (1) the claimant has engaged in

substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) the claimant can perform her past relevant work; and (5) the claimant is capable of performing any work in the national economy. *Id.*

**Summary of the ALJ's Determination**

The ALJ first determined the Relevant Period for Lucy's claim to span from December 1, 2015, the date at which Lucy claimed to have become eligible for disability benefits, to December 31, 2020, the date at which she was last insured. R. at 17. He then proceeded to examine Lucy's claim in accordance with the Social Security Administration's five-step analytical framework. *See* 20 C.F.R. §§ 404.1520(a); 416.920(a). At step one, the ALJ determined that Lucy had not engaged in substantial gainful activity during the Relevant Period. R. at 19. At step two, he found that Lucy suffered from severe impairments of multiple sclerosis, migraines, depression, and anxiety. *Id.* At step three, he concluded that Lucy's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 20. However, the ALJ found that Lucy's impairments did cause moderate limitations in understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing herself. *Id.* at 20–21.

At step four, the ALJ determined that Lucy had the Residual Functional Capacity ("RFC") during the Relevant Period to perform sedentary work, except that "she can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl and never climb ladders, ropes, or scaffolds or be exposed to unprotected heights or dangerous moving machinery… [and] can understand, remember, and carry out simple job instructions in a routine work setting with few, if any, changes but should not have a production-paced job with numerically strict hourly production quotas but can satisfy end

of day expectations." *Id.* at 22. He found that Lucy's impairments "could reasonably be expected to cause the alleged symptoms[.]" *Id.* at 23. However, he also found that Lucy's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* In support of this finding, the ALJ examined the record in depth, summarizing numerous medical records. He characterized Lucy's multiple sclerosis treatment as "routine and conservative" and observed that, in general, it "has been helpful in controlling" her symptoms. *Id.* at 23–24. The ALJ concluded that the Relevant Period was marked by few relapses and general clinical stability, despite switching medications multiple times. *Id.* at 24. The ALJ also examined medical records from after the Relevant Period, in which it appears that Lucy suffered no relapses. *Id.*

Over the course of the Relevant Period, Lucy's physical examinations showed that she maintained full field of vision, hearing grossly intact, and full or nearly full motor strength in upper and lower extremities, although she did have mild gait ataxia. *Id.* at 25. Mentally, Lucy varied during this period, with a 2018 depression screening indicating moderately severe depression, and an anxiety screening showing a positive result for anxiety. *Id.* at 26. By the next year, however, screenings showed no indication at that time of depression or anxiety. *Id.* Overall, the ALJ found that the record "suggests that the claimant's treatment has been helpful and effective in controlling her symptoms" of anxiety and depression. *Id.* Mental status examinations over the Relevant Period showed fluctuations in mood, which Lucy attributed partly to variations in her pain, but normal cognitive functions, judgment, comprehension, and language. *Id.* at 27.

When considering the opinions of medical experts and prior administrative medical findings, the ALJ properly refused to "defer or give any specific evidentiary weight, including controlling weight, to any" one source. *Id.* Two state medical consultants, both physicians, provided an opinion as to Lucy's physical limitations in which they recommended limiting Lucy to "light exertional work." *Id.*

The ALJ concluded that their findings were consistent with the record, but "inconsistent with the claimant's reports of her leg pain complaints and fatigue, which reasonably warrants a reduction to sedentary exertional work." *Id.* at 27–28. The ALJ therefore regarded their findings as "only partially persuasive." *Id.* at 28. He then examined the opinions of two state agency psychological consultants, both with doctorates, who had "found insufficient evidence to make a mental determination." *Id.* The ALJ found their opinions unpersuasive, as Lucy's testimony and the record constituted "sufficient evidence to establish severe mental impairments" during the Relevant Period. *Id.* Finally, the ALJ considered the March 2023 opinion of Dr. Katsamakis, M.D., who provided neurological treatment to Lucy throughout the Relevant Period. The ALJ took issue with Dr. Katsamakis's statement that Lucy was "unable to work in a competitive environment," finding that to be equivalent to a legal conclusion that Lucy was disabled, which is "an issue reserved for the Commissioner." *Id.* As such statements are "neither valuable nor persuasive," the ALJ did not analyze it. *Id.* The ALJ found other portions of Dr. Katsamakis's opinion—including, as the ALJ summarized, that Lucy would likely need to "be absent more than three times a month [from a full-time job] and would need to stop and rest at unpredictable intervals during a work shift"—to be in conflict with the record, particularly with Dr. Katsamakis's own clinical examinations that had "consistently noted good neurological status." *Id.* As such, the ALJ found Dr. Katsamakis's opinion, as a whole, to be unpersuasive. *Id.*

      At the conclusion of this analysis, the ALJ found that Lucy's RFC supported certain work limitations. Specifically, her physical symptoms from multiple sclerosis, including her fatigue, meant that, during the Relevant Period, "she should never climb ladders, ropes, or scaffolds and no exposure to unprotected heights or dangerous moving machinery." *Id.* Lucy's "reports of trouble remembering and concentrating," together with her "reports of pain, fatigue, complaints of buzzing in her ear and her anxiety and depression symptoms" meant that she could "understand, remember and carry out simple job instructions in a routine work setting with few, if any, changes[.]" *Id.* at 22, 28. Finally, her

"reports of stress and anxiety as well as fatigue" indicated that she "cannot work at a production rate pace with numerically strict hourly production quotas but can satisfy end of day employer expectations." *Id.* at 28.

Having determined the RFC, the ALJ proceeded to step four, where he found that the RFC limitations made Lucy unable to perform her previous job function as a nanny (or "house parent," in DOT terminology). *Id.* at 29. Finally, in step five, the ALJ relied on testimony from a vocational expert to find that, consistent with the limitations in her RFC, Lucy could have fulfilled the requirements for "unskilled, sedentary" jobs such as "document preparers… call out operators… and surveillance systems monitors." *Id.* at 29–30. The ALJ therefore concluded, at the end of the five-step analysis, that Lucy was "not disabled" during the Relevant Period within the meaning of the Social Security Act. *Id.* at 30.

## DISCUSSION

Lucy contends (1) that the ALJ failed to account for Lucy's fatigue and chronic pain in his RFC determination; (2) that he used cherry picked evidence to support his conclusion and ignored contrary evidence; and (3) that he "failed to support his rejection of a treating neurologist's source opinion with substantial evidence." Dkt. 10 at *5 [hereinafter "Pl. Br."]. She argues that all three constitute reversible error. *Id.* The Commissioner disagrees, and also argues that Lucy's appeal is marred by a "general design flaw" of failing to specify which physical or mental restrictions are missing from the RFC determination. Dkt. 15 at *5 [hereinafter "Gov. Br."]. The Court will first address the Commissioner's argument and will turn afterward to Lucy's contentions.

I. **Lucy did not fail to specify missing RFC restrictions.**

The Commissioner claims, as a threshold issue, that any challenge to an RFC determination requires a specification as to what physical or mental restrictions are missing from the RFC. Gov. Br.

*5. He argues that Lucy's failure to make such a specification warrants dismissal of her appeal on that basis alone. *Id.* In support, he cites Seventh Circuit precedent, *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019), as well as a prior opinion of this Court, *Cynthia T. v. Saul*, No. 18 C 50288, 2020 WL 564223, at *6 (N.D. Ill. Feb. 5, 2020) (Coleman, J.). But the Commissioner reads these cases too broadly.

In *Jozefyk*, the Seventh Circuit rejected the plaintiff's appeal because it found the ALJ's assessment to be free of error. 923 F.3d at 497. However, even if that ALJ had made an error, the Seventh Circuit regarded it as harmless because it was "unclear what kinds of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none." *Id.* at 498. As an initial matter, this observation was likely dicta, as it was an argument in the alternative, rather than the basis of the Seventh Circuit's judgment. *See United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) (defining dictum as "a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding" (citing *Sarnoff v. American Home Products Corp.*, 798 F.2d 1075, 1084 (7th Cir.1986))). But, even putting that aside, the Seventh Circuit's statement does not imply a threshold requirement that any challenge to an RFC contain a specific statement concerning missing restrictions. Instead, the court of appeals merely observed that, in the case of Mr. Jozefyk, the record and subsequent briefing did not provide sufficient details for devising any other restrictions. 923 F.3d at 498. This is made clear in the final sentence of the paragraph (and opinion), where the Seventh Circuit concluded that "Because Jozefyk did not testify about restrictions in his capabilities related to concentration, persistence, or pace deficits, and the medical record does not support any, there are no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand." *Id.* What is needed, then, is not *necessarily* a briefed argument for specific restrictions, but rather a basis for determining such restrictions, if they are to be added on remand. This approach finds support in other Seventh Circuit cases, *see, e.g.*, *Weaver v. Berryhill*, 746 F. App'x

574, 579 (7th Cir. 2018), and it was also the approach used by this Court in *Cynthia T*, No. 18 C 50288, 2020 WL 564223.

In any case, Lucy has been quite clear about what she sees as the central fault of the RFC, namely, that it did not adequately incorporate her issues related to fatigue and chronic pain. *See, e.g.*, Pl. Br. *7. She has also been quite clear in arguing that the RFC should have accounted for these symptoms by adopting Dr. Katsamakis's opinion that she was unable to work a position for eight hours per day, five days a week, and would need to be absent for up to three days a month. *Id.* at *14; *see also* dkt. 17 at *1-2. As will be detailed below, the Court does not believe that Lucy has met the criteria for reversal, but if this Court were to have decided otherwise, the ALJ would have ample basis in the record and in argumentation for determining what additional work restrictions to include in the RFC. The Commissioner's argument for a threshold dismissal of Lucy's appeal is thus wrong, inapplicable, or both.

## II.     The ALJ did not fail to account for Lucy's fatigue and chronic pain in the RFC determination.

The largest portion of Lucy's appeal relates to her contention that the ALJ erred by failing to incorporate her testimonial and documentary evidence of significant fatigue and chronic pain into his RFC determination. She argues, correctly, that an ALJ is required to incorporate all impairments suffered by a claimant into the RFC determination. Pl. Br. *7; *see* 20 C.F.R. § 404.1545; *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). However, Lucy has not shown that the ALJ failed to do so.

Lucy claims that the ALJ did not "consider the effects of Plaintiff's chronic pain and fatigue on her mental functioning, seemingly dismissing those symptoms as irrelevant[.]" Pl. Br. *9. However, that is not what his opinion shows. Rather, the ALJ specifically mentioned Lucy's pain and fatigue, together with her anxiety, depression, and other symptoms, as factors influencing his conclusion with respect to Lucy's limitation of needing "a routine work setting with few if any changes." R. at 28. The

ALJ wrote that this limitation corresponds to the understanding, remembering, or applying information criterion and the concentrating, persisting, or maintaining pace criterion, both of which are aspects of an ALJ's mental impairment analysis. *Id.*; *see* 20 CFR § 404.1520a(c). The ALJ also specified fatigue as a factor, together with stress and anxiety, informing his determination of Lucy's limitation that she "cannot work at a production rate pace with numerically strict hourly production quotas but can satisfy end of day employer expectations. R. at 28. This limitation corresponds to the concentrating, persisting, or maintaining pace and adapt or manage oneself criterion, both of which, as above, are aspects of an ALJ's mental impairment analysis. *Id.*; *see* 20 CFR § 404.1520a(c). The opinion therefore facially refutes Lucy's contention that the ALJ did not incorporate her pain and fatigue into his analysis of her mental functioning.

Elsewhere, the ALJ's opinion shows that he considered Lucy's pain and fatigue in multiple contexts. He explicitly relied on Lucy's reports of leg pain and fatigue in going beyond the recommendation of the state physical health examiners. R. at 28. His summary of Lucy's mental health examinations includes the detail that she was "tired and in distress" during a July 2018 appointment. *Id.* at 27. The ALJ reported that Lucy "testified to pain that never goes away and makes it hard to focus or concentrate," as well as to "fatigue and tiredness with pain." *Id.* at 23. He observed that Lucy had been treated at a pain center and suffered from "lower extremity pains likely neuropathic" owing to complications from multiple sclerosis. *Id.* The ALJ reported that Lucy was prescribed a variety of medications to help deal with her chronic pain over the course of the Relevant Period. *Id.* at 24. He also recorded that Lucy claimed that "her mood varied as impacted by her pain." *Id.* at 27. Nothing suggests that the ALJ failed to give Lucy's pain and fatigue due and reasonable consideration.

Lucy also argues that the ALJ's step three finding of a moderate limitation with respect to maintaining concentration, persistence, or pace is inconsistent with his RFC determination that Lucy was capable of unskilled work with simple instructions. As Lucy observes, "The relative difficulty of

a specific job assignment does not necessarily correlate with an individual's ability to stay on task or perform at the speed required by a particular workplace." Pl. Br. at 11 (citing *Martin v. Saul,* 950 F.3d 369, 373-374 (7th Cir. 2020)). That is undoubtedly true as a general statement, and the Seventh Circuit has said as much on multiple occasions. *Martin,* 950 F.3d at 373–374; *see also, e.g., Crump v. Saul,* 932 F.3d 567, 570 (7th Cir. 2019); *DeCamp v. Berryhill,* 916 F.3d 671, 675–76 (7th Cir. 2019); Moreno v. Berryhill, 882 F.3d 722, 730 (7th Cir. 2018). However, it is not applicable to this case. Here, the ALJ took careful consideration of Lucy's moderate limitations in maintaining concentration, persistence, or pace not only in limiting her to tasks with simple instructions, but also in determining that she "cannot work at a production rate pace with numerically strict hourly production quotas but can satisfy end of day employer expectations." R. at 28. This is exactly the sort of recognition of an inability "to complete a task consistently over the course of a workday" that Lucy alleges the ALJ failed to take into consideration, and it is therefore fatal to her argument. *See Martin,* 950 F.3d at 374 (ALJ who carefully tailored claimant's RFC to incorporate claimant's difficulty concentrating and staying on pace by limiting claimant to jobs with "flexibility and work requirements that were goal-oriented" committed no error).

In short, rather than failing to take Lucy's pain and fatigue into account, the ALJ incorporated these symptoms into his analysis at multiple points. Lucy points to several places in the record mentioning her fatigue and pain, *see* Pl. Br. *9-10, but an ALJ cannot be expected to relate every piece of evidence in a record spanning almost 750 pages. *Reinaas v. Saul,* 953 F.3d 461, 467 (7th Cir. 2020) (citing *Villano,* 556 F.3d at 562). An ALJ's job in this context is to examine the record, ascertain the most important pieces of evidence necessary for a full and fair evaluation, to determine on that basis whether the claimant is disabled within the meaning of the Social Security Act, and to "explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 351 (7th Cir. 2005) (citing *Herron v. Shalala,* 19 F.3d 329, 333–

34 (7th Cir.1994)). Because there is no evidence that the ALJ "ignored an entire line of evidence contrary to [his] ruling," there is no basis for Lucy's argument that the ALJ failed to account for her pain and fatigue. *Reinaas*, 953 F.3d at 467 (citing *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016)).

### III. The ALJ did not cherry pick in analyzing Lucy's symptoms or fail to build the required logical bridge from evidence to conclusions.

Lucy also argues that the ALJ committed "rampant" cherry picking of the evidence in arriving at his conclusion and failed to build the requisite "logical bridge" from the evidence to his conclusion. Pl. Br. *12–13; *Villano*, 556 F.3d 562 (7th Cir. 2009). However, there is little to say here that has not already been said in the previous paragraph. The Court disagrees with Lucy's characterization of the ALJ's opinion, which it regards as thorough and fair. Lucy's list of uncommented upon evidence does not constitute a fair accusation of cherry picking unless there is reason to think that the ALJ persistently failed to account for evidence contrary to his conclusion. Pl. Br. *12; *Reinaas*, 953 F.3d at 467 (citing *Meuser*, 838 F.3d at 912). Here, there is no such reason.

Let us examine a representative sample. Lucy claims that the ALJ failed to mention Dr. Katsamakis's note that, despite seeing a pain specialist, "nothing seemed to be helping with the burning sensation in her lower extremities," and that the doctor "presumed her pain was secondary to [multiple sclerosis]." Pl. Br. *12. As an initial matter, Lucy is facially incorrect on one point: the ALJ *did* note that Dr. Katsamakis presumed her pain derived from multiple sclerosis; he specifically wrote that the doctor "attributes the pain to nerve damage."[2] R. at 23. And while the ALJ may not have specifically noted Dr. Katsamakis' December 2019 observation that nothing seemed to be helping Lucy with her leg pain, the ALJ did record the changing medications prescribed to Lucy to treat her

---

[2] Multiple sclerosis "is a disease that causes breakdown of the protective covering of nerves," and there are no other diagnoses at issue in Lucy's petition that are related to nerve damage. *Multiple Sclerosis*, The Mayo Clinic (Nov. 1, 2024), https://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/symptoms-causes/syc-20350269.

pain, as well as Dr. Katsamakis's observation that Lucy was still dealing with chronic pain in April 2021. R. at 24.

Lucy's other examples suffer from similar errors. Nothing in the opinion suggests that the ALJ ignored the evidence of Lucy's pain or that he cherry-picked details from the record that tended to minimize her symptoms. Rather, the opinion presents an even-handed weighing of all the evidence, reaching a conclusion that was less favorable to Lucy than Dr. Katsamakis believed was appropriate, but more favorable to Lucy than the other four opining doctors believed was necessary. R. at 27–28. Moreover, there is a clear logical bridge between the evidence cited by the ALJ and the conclusions he reached. *Villano*, 556 F.3d at 562. The ALJ carefully tailored the RFC to Lucy's capabilities and limitations based on a reasonable assessment of the medical evidence. Ultimately, Lucy's accusations of cherry-picking amount to a request that this Court re-weigh the evidence—but this Court cannot and will not do that.

### IV. The ALJ properly considered Dr. Katsamakis's source opinion in the context of the record as a whole.

Finally, Lucy argues that the ALJ's decision should be reversed because he improperly "rejected" Dr. Katsamakis's source opinion. R. at *14. Here again, Lucy mischaracterizes the ALJ's opinion. She claims that the ALJ only "focused on [Dr. Katsamakis's] statement that Plaintiff is disabled." Pl. Br. *14. As described above, the ALJ rejected this statement as improper, because it is a determination reserved for the Commissioner. R. at 28. But that was not the totality of the ALJ's engagement. Rather, the ALJ spent a lengthy paragraph describing the opinion; it was the longest treatment of any of the three medical source opinions in the record. R. at 27–28. And that is on top of the ALJ's lengthy engagement earlier in his opinion, as cited numerous times above, with all Dr. Katsamakis's medical records.

Lucy characterizes as "perfunctory, vague, and unsupported" the ALJ's written reason for finding unpersuasive the other portions of Dr. Katsamakis's opinion (*i.e.*, the portions that did not reach legal conclusions). Pl. Br. *15. The Court acknowledges that this section of the ALJ's opinion is not as fully developed as might be the case. R. at 28. But that does not render accurate any of Lucy's accusatory adjectives. The ALJ stated that he found the doctor's opinion to be unsupported and in conflict with the rest of the medical record, in particular with the doctor's own prior examinations showing consistently good neurological status. *Id.* The ALJ then referred the reader to his previous (and detailed) descriptions of those examinations. *Id.* While further elaboration would have been nice, the ALJ still provided "enough analysis to allow a reviewing court some idea of why [he] rejected" the doctor's opinion. *Spicher v. Berryhill*, 898 F.3d 754, 758 (7th Cir. 2018) (citing *Clifford v. Apfel*, 227 F.3d 863, 873–74 (7th Cir. 2000)). The relevant regulations specify that the most important factors in evaluating a medical opinion are supportability and consistency, 20 CFR § 404.1520c(b)(1–2), and it is precisely those factors that the ALJ found were lacking in Dr. Katsamakis's opinion, R. at 28. The ALJ's treatment of Dr. Katsamakis's opinion was not unrooted from substantial evidence, and to the extent that it was short, that shortness was earned through the ALJ's earlier substantial engagement with the doctor's medical records.

Moreover, even if the ALJ erred in his discussion of Dr. Katsamakis's opinion, the error was harmless. If the reviewing court "can predict with great confidence that the result on remand would be the same," despite an ALJ's error, then remand is unnecessary. *Schomas v. Colvin*, 732 F.3d 702, 707–08 (7th Cir. 2013) (citing *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). As the Commissioner points out, Dr. Katsamakis's "opinion" is a two-page document consisting mostly of checkmarks. Gov. Br. *11; *see* R. at 771–72. The entire opinion contains only one sentence of actual text written by the doctor, plus three additional words at other places. R. at 771–72. It is also unclear the extent to which Dr. Katsamakis's opinion reflects his assessment of Lucy's capabilities during the Relevant

Period, as opposed to his assessment of Lucy's capabilities when the doctor wrote the opinion in March 2023. These factors, not mentioned by the ALJ—together with the ALJ's aforementioned substantial engagement with Dr. Katsamakis's other medical records—give the Court "great confidence" that, even if the ALJ erred, he would still reach the same conclusion on remand. *Schomas*, 732 F.3d at 707–08. In doing so, the Court is not substituting its own judgment for that of the ALJ, but rather noting the careful analysis of the entire record that produced the ALJ's finding. *See McKinzey*, 641 F.3d at 892 ("[T]he harmless error standard is not… an exercise in rationalizing the ALJ's decision and substituting our own hypothetical explanations for the ALJ's inadequate articulation"). The ALJ's conclusion may have been short, but nothing suggests that he failed to give Dr. Katsamakis's opinion careful consideration in the context of the record as a whole.

Lucy clearly disagrees with the weight the ALJ assigned to portions of the record. The Court concedes that a different ALJ might have weighted the evidence differently—perhaps more to Lucy's liking, or perhaps less to her liking. Her medical record permits multiple conclusions. The task of this Court is not to substitute its judgment for that of the deciding ALJ, but rather to review his decision for legal errors and patently wrong evidentiary evaluations. The ALJ's opinion and the record before this Court do not show any such issues.

## CONCLUSION

For the foregoing reasons, the Court grants the Commissioner's motion for summary judgment [14]. The ALJ's decision is affirmed.

**IT IS SO ORDERED.**

Date: 2/3/2026

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge